UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| KURT SPARTZ, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) CIVIL ACTION NO: |
| v. | ) |
| | ) **305CV01420** |
| JOHN J. ARMSTRONG, THERESA C. LANTZ, MARK W. | ) |
| STRANGE, STATE OF CONNECTICUT, CONNECTICUT | ) **AVC** |
| DEPARTMENT OF CORRECTIONS, UNIVERSITY OF | ) |
| CONNECTICUT HEALTH CENTER, EDWIN NJOKU, | ) |
| OMPRAKESH PILLAI, JOHN G. ITTZUS, FRANCES | ) |
| ABOGUNDE, JULIET GAIMA, EDWARD LEHMAN, | ) |
| RICHARD MATZKO, DENESE (BESAW) BOTAS, | ) |
| JOSEPH TAYLOR, MICHELLE CABANA, CATHY | ) |
| WILSON, CHRISTINA (KARKEVICH) AGOSTINELLI, | ) |
| DEBORAH CARPENTER, DONNA FLORES, JENNIFER | ) |
| FORTIN, SEAN MACRAE, WENDY SEIFERT, CHERYL | ) |
| SPANO, ANGELA ATCHISON, CYNTHIA (CRICHTON) | ) |
| GUILBERT, COLETTE KOCH, PAMELA BERGERON, | ) |
| CHRISTINE GUDAITIS, COLLEEN MURATORE, | ) |
| ELIZABETH MORIN, SHEILA HUGHES, DOROTHY | ) |
| BUJNEVICIE, LINDA COTE, SANDRA PATTERSON, | ) |
| JOSHUA POWELL, MARCIA BUTLER, CATHERINE | ) SEPTEMBER 9, 2005 |
| AINSWORTH, GAIL MOULTON, PETER KING, CAROL | ) |
| MONETTE, CHRISTINE TAUCHER, DONALD WELLS | ) |
| And KRISTINE BAY | |

**JURISDICTION**

1.    This case is brought pursuant to 42 U.S.C. § 1983 and pursuant to the laws of the State of Connecticut. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343. Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

## VENUE

2.  Venue is based upon 28 U.S.C. §§ 1391 (b)(1) and (2). All of the Defendants reside in the District of Connecticut, and all of the acts or omissions giving rise to the claims herein arose in the District of Connecticut.

## PARTIES

3.  Plaintiff Kurt Spartz is a Connecticut resident currently living in Groton, Connecticut. He was incarcerated within the care, custody and control of the Connecticut Department of Correction between January 2003 and September of 2003. He is no longer incarcerated.

4.  Defendant John J. Armstrong and/or Theresa C. Lantz were at all relevant times Commissioner of the Connecticut Department of Correction. As such, they were responsible for the administration of the State's correctional system, the policies and procedures followed within the State's correctional system, the care and custody of persons incarcerated by the Department of Correction, and the hiring, supervision, training, discipline and control of persons working for the Department of Correction. They are sued in their individual capacities.

5.  Defendant Mark W. Strange was at all relevant times Warden of Osborne Correctional Institution. As such, he was responsible for the administration of Osborne, the policies and procedures followed by Osborne staff, the care and custody of persons incarcerated at Osborne, and the hiring, supervision, training, discipline and control of persons working at Osborne. He is sued in his individual capacity.

6.     Defendants State of Connecticut and Connecticut Department of Correction, acting through their agents, representatives and employees, were responsible for the medical care and treatment of Kurt Spartz at all relevant times mentioned herein.

7.     Defendant University of Connecticut Health Center, is and was at all relevant times responsible for providing medical services and supervision to persons in the custody of the Connecticut Department of Correction.

8.     Defendant Sheila Hughes, was at all relevant times a supervising nurse at. As such, she was responsible for day to day delivery of medical care, including prescribed pharmaceuticals, to Osborne inmates. She was also responsible for training and supervising other staff nurses in the execution of their duties. She is sued in her individual capacity.

9.     Defendants Edwin Njoku, Omprakesh Pillai, and John Gittzus were at all relevant times medical doctors employed by the Department of Correction and/or the University of Connecticut Health Center, and working at Osborne Correctional facility. As such, they were responsible for providing medical care to Osborne inmates, including Kurt Spartz. They are sued in their individual capacities.

10.    Defendants Carpenter, Flores, Fortin, Macrae, Seifert, Spano, Atchison, Crichton, Koch, Bergeron, Gudaitis, Muratore, Morin, Bujnevicie, Cote, Patterson, Powell, Butler, Ainsworth, Moulton, King, Monetter, Taucher, Wells, Bay, Abogunde, Gaima, Lehman, Matzko, Besaw, Taylor, Cabana, Wilson, and Karkevich were at all times nurses employed by the Department of Correction and working at Osborne. As such they were responsible for providing medical care to Osborne inmates, including medication administration. They are sued in their individual capacities.

3

11.     The medical professionals identified in paragraphs 8 through 10 are collectively identified as the "Osborne Medical Staff."

12.     At all times mentioned herein, each individual defendant was acting in the course and scope of his or her employment.

13.     At all times mentioned herein, each defendant was acting under color of state law.

## FACTS

14.     In 1984, plaintiff Kurt Spartz was diagnosed with rheumatoid arthritis, an autoimmune illness which primarily affects joint function.

15.     Mr. Spartz was diagnosed with Crohn's Disease and/or ulcerative colitis in 1986. Crohn's Disease and ulcerative colitis are inflammatory bowel diseases of the digestive system. Although they are lifelong illnesses, "flare ups" and inflammation can be successfully controlled through proper treatment and medication.

16.     From the time of his diagnosis in 1986 to the time of his incarceration in January 2003, Spartz successfully controlled his inflammatory bowel disease through the use of prescribed medication.

17.     On January 13, 2003 Spartz was ordered incarcerated after pleading guilty, under the Alford Doctrine, to a single count of Larceny in the First Degree (Conn. Gen. Stat. 53a-122). He was taken into custody that day.

18.     As part of Spartz' sentencing, the Court's Mittimus specifically ordered that Spartz be maintained on "medical watch" and specifically stated that "Spartz needs prescription medications . . .."

4

19.     At the time he was incarcerated, Spartz was taking three medications to treat his inflammatory bowel disease and his co-morbid rheumatoid arthritis: Sulfasalazine; Methotrexate; and Folic Acid.  Sulfasalazine is an anti-inflammatory medication used to prevent "flare ups" in people with Chron's Disease and/or ulcerative colitis.

20.     When Spartz was incarcerated, a limited quantity of each medication went with him.  On January 13, 2003, Spartz was incarcerated at Corrigan Correctional Facility ("Corrigan").  While there, he received all appropriate medication in maintenance of his Crohn's disease.

21.     While at Corrigan, Spartz had no "flare-ups" or other clinically significant symptoms associated with his inflammatory bowel disease.

22.     On or about January 22, 2003 Spartz was transferred from Corrigan to Osborne.

23.     At Osborne, Spartz was housed in what was known as "The Loft," a special section reserved for inmates over the age of fifty (50).  The Loft was divided into two sections, Sections One and Two, each housing approximately seventy-five (75) inmates.  Spartz was housed in Section One.

24.     On several occasions in early to mid-February, the Osborne Medical Staff failed to provide Mr. Spartz with prescribed doses of Sulfasalazine.

25.     Beginning in mid to late February, 2003, and continuing thereafter, the Osborne Medical Staff failed to provide Spartz with any doses of Sulfasalazine.

26.     From mid-February of 2003 to approximately March 19, 2003 Spartz directed verbal and written requests for his prescribed Sulphasalazine to the Osborne Medical Staff.

27.     Despite many repeated requests, the Osborne Medical Staff refused and/or failed to provide Spartz with the prescribed Sulphasalazine.

28. Beginning in early March 2003, Mr. Spartz began to experience a flare up of his inflammatory bowel disease.

29. From that time until March 19, 2003, Mr. Spartz' condition deteriorated as he began to experience increasingly frequent diarrhea, fever, nausea, stomach pain, and weight loss.

30. On March 11, 2003, after several requests for medical attention, Mr. Spartz finally saw defendant Dr. Edwin Njuku, who noted that Mr. Spartz was most likely experiencing a flare-up related to Crohn's disease and was suffering from exhaustion.

31. Defendant Njuku prescribed prednisone, a steroid, for purposes of reducing the inflammation in Mr. Spartz' bowels. The prednisone regime was to begin at 60 milligrams four times per day and taper to zero over approximately one month's time.

32. The Osborne Medical Staff refused and/or failed to provide Mr. Spartz with even a single dose of the prescribed prednisone.

33. Mr. Spartz' condition continued to deteriorate such that by March 19, 2003 he was experiencing diarrhea accompanied by blood approximately twenty-four (24) times per day.

34. On March 19, 2003, Mr. Spartz' lost consciousness in the "telephone area" of the loft while on the phone with his girlfriend Gretchen Dutra.

35. Shortly thereafter, Mr. Spartz was admitted to the Osborne Correctional infirmary, where the Osborne Medical Staff noted that he felt dizzy; was shaking; was experiencing diarrhea every hour; had blood present in his stool; had heavy bleeding at times; and had vomited bile two to three times that day.

36. On March 20, Osborne Medical staff sent Kurt Spartz to University of Connecticut Health Center's John Dempsey Hospital.

37. A colonoscopy at John Dempsey Hospital revealed a severely inflamed bowel consistent with active Chron's Disease and/or ulcerative colitis.

38. On April 7, 2003, Mr. Spartz experienced a significant increase in his abdominal pain. Testing done at John Dempsey Hospital revealed a significant amount of free air in and around his colon, indicating that his colon had perforated.

39. Mr. Spartz was taken urgently to an operating room where medical staff at John Dempsey Hospital performed a complete abdominal colectomy, whereby his colon was removed, and ileostomy, whereby an artificial excretory opening was surgically created through Mr. Spartz' abdominal wall into his ileum.

40. As a result of his failure to receive medication and the ensuing flare-up of his inflammatory bowel disease, Mr. Spartz sustained severe, painful and permanent injuries. He sustained:

a. a severe shock to his nervous system;

b. a progressively worsening bowel condition characterized by abdominal pain, nausea, diarrhea, dizziness, dehydration, weakness, and vomiting;

c. a perforation of his colon caused by inflammation;

d. a surgical procedure under general anesthesia requiring abdominal incisions, a complete abdominal colectomy and ileostomy;

e. creation of a stoma or opening from his small intestine through his torso to drain feces, requiring him to wear an ostomy bag at all times;

    f.      permanent scarring and disfigurement;

    g.      permanent dieting changes;

    e.      an increased risk of abdominal complications in the future;

    h.      severe pain and suffering, distress of mind, embarrassment and humiliation;

41.     As a further result of his failure to receive medication and the ensuing flare of his inflammatory bowel condition, Mr. Spartz was required to expend sums for medical and surgical care, visiting nurses, diagnostic imaging and related expenses, and will be required to expend additional such sums in the future.

42.     As a further result of his failure to receive medication and the ensuing flare of his inflammatory bowel condition, Mr. Spartz has undergone additional gastrointestinal surgery whereby the remaining eighteen inches of his large intestine was removed, and will require further surgery in the near future.

43.     As a result of such injuries, Mr. Spartz has a reduced ability to find work and earn a living.

44.     Said injuries are a direct result of the conduct of the Osborne Medical Staff in one or more of the following respects:

    a.      failing to administer adequate doses of prescribed Sulfasalazine;

    b.      failing to administer adequate doses of prescribed prednisone;

    c.      failing to follow Department of Correction policies, procedures, and guidelines governing medication administration;

    d.      failing to stock adequate supplies of medication to ensure its availability;

e.  failing to follow physician's orders;

f.  failing to ascertain or become familiar with the nature, properties, and constituent ingredients of the various drugs prescribed for plaintiff;

g.  failing to ascertain the nature and extent of possible adverse reactions and sensitivity reactions that might result from the drugs prescribed for plaintiff or from failure to administer said drugs;

h.  failing to follow recommendations and safeguards proposed by the manufacturers of the drugs so prescribed in violation of the duty to follow recommendations and safeguards;

i.  failing to abide by a specific Court order to administer prescribed medication to Mr. Spartz;

j.  failing to respond to repeated requests for medication;

k.  failing to respond to repeated requests for medical treatment related to Mr. Spartz' deteriorating condition;

l.  failing to recognize and treat Mr. Spartz inflammatory bowel condition in a timely fashion.

## First Claim For Relief

**(Deliberate Indifference – Failure to Provide Constitutionally Adequate Medical Care – against the Osborn Medical Staff defendants in their individual capacities pursuant to 42 U.S.C. §1983)**

1-44.  Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 44 above.

45.  Plaintiff's inflammatory bowel condition and prescribed medication regime were at all relevant times serious medical needs.

46. The conduct of the Osborne Medical Staff defendants constituted deliberate indifference to plaintiff's serious medical needs in violation of plaintiff's rights under the Eighth and Fourteenth Amendments to the United State's Constitution.

47. The conduct of the Osborne Medical Staff defendants was the direct and proximate cause of the injuries described in paragraphs 39 through 42 above.

## Second Claim for Relief

**(Deliberate Indifference – Failure to Provide Constitutionally Adequate Medical Care – Supervisory Liability against defendants, Armstrong, Lantz and Hughes in their individual capacities pursuant to 42 U.S.C. § 1983)**

1-44. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 44.

45. The defendants were personally involved in and responsible for the deliberate indifference to Mr. Spartz' serious medical needs in that:

   a. They created a policy and custom, and they allowed the continuance of a policy and custom, under which inmates, including Kurt Spartz, would be deprived of adequate medical care; and

   b. They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein.

46. The acts and omissions of the defendants proximately caused Mr. Spartz' suffering and injuries.

47.     By failing to provide Mr. Spartz with constitutionally adequate medical care, the defendants knowingly disregarded an excessive risk to Mr. Spartz' health and safety and knowingly subjected him to pain, physical and mental injury, thereby violating his rights under the Eighth and Fourteenth Amendments to the United States' Constitution.

### Third Claim for Relief

**(Negligence/Medical Malpractice Against the defendant State of Connecticut and University of Connecticut Health Center)**

1-44.   Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 44 above.

45.     During the time that Mr. Spartz was incarcerated and until his release in September of 2003, the State of Connecticut and the University of Connecticut Health Center, and their employees, servants and agents, undertook his care, treatment, monitoring and supervision.

46.     While under the care of the entities and individuals described in paragraph 44, Mr. Spartz suffered severe, serious, and permanent injuries.

47.     The injuries suffered by Mr. Spartz were caused by the failure of the State of Connecticut and the University of Connecticut Health Center, and their employees, servants and agents to exercise reasonable care under all of the circumstances then and there present.

48.     On December 2, 2004 the Connecticut Claims Commissioner granted plaintiff Kurt Spartz permission to sue the State of Connecticut, for medical malpractice. A copy of the Commissioner's Order, and a copy of the claimant's Certificate of Good Faith, submitted pursuant to Conn. Gen. Stat. § 52-190a are attached hereto.

## Prayer for Relief

**WHEREFORE,** plaintiff Kurt Spartz prays for relief as follows:

1. For compensatory damages according to proof;

2. For punitive damages;

3. For costs and reasonable attorneys fees; and

4. For such further relief as the Court deems just and proper.

        THE PLAINTIFF,
        KURT SPARTZ

By: _____
        Joshua D. Lanning (ct24529)
        JACOBS, GRUDBERG, BELT, DOW & KATZ P.C.
        350 Orange Street
        New Haven, CT 06503
        Telephone No.: 203-772-3100
        Facsimile No.: 203-772-1691
        e-mail: jlanning@jacobslaw.com

LAW OFFICES OF

# Jacobs, Grudberg, Belt & Dow, P.C.

350 ORANGE STREET
POST OFFICE BOX 606
NEW HAVEN, CONNECTICUT 06503-0606

TELEPHONE (203) 772-3100
FACSIMILE (203) 772-1691

HOWARD A. JACOBS
IRA B. GRUDBERG
DAVID L. BELT
WILLIAM F. DOW, III
JONATHAN KATZ
WILLIAM M. BLOSS
DAVID T. GRUDBERG
BERNARD CHRISTIANSON
ROSEMARIE PAINE
JOSEPH J. PACKTOR
ALINOR C. STERLING
ANDREW I. SCHAFFER
TRISHA MORRIS PORTO
EDWARD J. McMANUS
JOSHUA D. LANNING

ISRAEL J. JACOBS (1918-1963)

FILE NUMBER

T03-1697

June 2, 2004

Commissioner James R. Smith
Office of the Claims Commissioner
18-20 Trinity Street
Hartford, CT  06106

  **Re:**    **Certificate of Good Faith**
  **Case:**   **Spartz v. State of Connecticut**
  **Claim No:** **20043**

Dear Commissioner Smith:

  Pursuant to Conn. Gen. Stat. § 4-160 and § 52-190, claimant, through counsel, represents that he has investigated and believes, in good faith, that the alleged actions of state personnel fell below the applicable professional standard of care. Claimant therefore requests that the Claims Commissioner authorize suit against the State of Connecticut.

            Very truly yours,

            JACOBS, GRUDBERG, BELT & DOW, P.C.

            By_____
              Joshua D. Lanning

JDL/da

JAMES R. SMITH
COMMISSIONER



18-20 Trinity Street
Hartford, CT 06106
Telephone (860) 566-2024
Facsimile (860) 566-3406

**STATE OF CONNECTICUT**
Office of Claims Commissioner

**FILE NO. 20043**

IN THE MATTER OF
A CLAIM AGAINST THE STATE OF CONNECTICUT
BY
**KURT SPARTZ**

Kurt Saprtz, by Attorney Joshua D. Lanning, Jacobs, Grudberg, Belt & Dow, P.C., 350 Orange Street, P.O. Box 606, New Haven, CT 06503, filed a claim with the Commissioner for personal injury.

## FINDING AND ORDER

The claimant is hereby granted permission to sue the state as the Commissioner finds that the requirements of Section 4-160(b) of the Connecticut General Statutes have been met.

"This grant of permission to sue is limited to that portion of the claim alleging malpractice against the state, a state hospital or a sanitarium or against a physician, surgeon, dentist, podiatrist, chiropractor, or all other licensed health care providers employed by the state."

BY ORDER OF THE COMMISSIONER

JAMES R. SMITH

I hereby certify that the foregoing is a true and correct copy of the Finding and Order of the Commissioner of Claims.

DATED: December 2, 2004          Nanci Mae Gminski, Chief Clerk

cc:   Robert F. Vacchelli
      Assistant Attorney General